UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAROL CUTTING, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|        v. | )   Case No. _____ |
| | ) |
| DOWN EAST ORTHOPEDIC | ) |
| ASSOCIATES, P.A. | ) |
| | ) |
|        Defendant | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**(INJUNCTIVE RELIEF REQUESTED)**

Plaintiff Carol Cutting, by and through undersigned counsel, hereby complains against Defendant Down East Orthopedic Associates, P.A. ("Down East") as follows:

**INTRODUCTION**

1. This case arises under Title III of the Americans with Disabilities Act and amendments thereto ("ADA"), 42 U.S.C. § 12182 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*

2. This case challenges the Defendant's disability discrimination against Plaintiff in violation of the ADA and the MHRA.

**THE PARTIES**

3. Plaintiff Carol Cutting ("Ms. Cutting") is an individual residing in the City of Bangor, County of Penobscot, and State of Maine.

4. Defendant Down East is a corporation duly authorized to do business in the State of Maine, which operates a private medical practice located in Bangor, Maine.

1

5. At all times herein relevant to this Complaint, Ms. Cutting was a patient of Down East.

6. At all times herein relevant, D. Thompson McGuire, MD ("Dr. McGuire") was an orthopedic surgeon licensed to practice medicine in Maine and employed by Down East.

## JURISDICTION AND VENUE

7. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of Penobscot and State of Maine.

8. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

9. In 2013, Ms. Cutting's primary care physician referred her to Dr. McGuire at Down East in consultation for right shoulder pain.

10. Ms. Cutting's pain began after a fall at home in 2011 and had not resolved with physical therapy or other conservative forms of pain management.

11. Ms. Cutting has suffered from Tourette's Syndrome for many years; this disabling condition causes her to have repeated vocal and motor tics, including occasional arm movements and pointing.

12. Based on the substantial limitations in major life activities caused by her Tourette's Syndrome, Ms. Cutting is a qualified individual with a disability within the meaning of the ADA and MHRA.

13. Down East regarded Ms. Cutting as disabled based on the conduct of its employee, Dr. McGuire, as set forth below.

14. Down East is a place of public accommodation within the meaning of ADA Title III.

15. On June 20, 2013, Ms. Cutting had her first and only office visit with Dr. McGuire, who diagnosed Plaintiff with Acromioclavicular Arthritis based on her constant shoulder pain, as well as possible rotator cuff tendinitis and impingement.

16. Dr. McGuire's treatment plan for Ms. Cutting was a right shoulder arthroscopy, subacromial decompression, and open distal clavicle excision, to be performed on November 13, 2013.

17. During the June 20, 2013 office visit, Dr. McGuire noticed Ms. Cutting's vocal and motor tics and treated her in a disrespectful, rude, and insulting manner.

18. Dr. McGuire moved his seat across the room to create significant distance between himself and Ms. Cutting on June 20, 2013, stating: "I don't want you to hit me" in reference to her tics.

19. The above comment was humiliating and demeaning to Ms. Cutting, as her unavoidable tics are non-violent.

20. Dr. McGuire never told Ms. Cutting prior to the time he performed the November 13, 2013 arthroscopic surgery that her Tourette's Syndrome would have an impact on his approach to surgery.

21. During the November 13, 2013 surgery, Dr. McGuire discovered that Ms. Cutting had a full-thickness rotator cuff tear with 2 cm of retraction.

22. Dr. McGuire performed debridement of the area on November 13, 2013, but did not repair Ms. Cutting's rotator cuff tear.

23. Dr. McGuire and/or his staff later explained to Ms. Cutting that her shoulder could not be repaired during surgery because she would "just tear it again" when she woke up from surgery, in reference to moving her shoulder during uncontrollable motor tics.

24. In failing and refusing to perform the necessary repair of Ms. Cutting's rotator cuff during her November 13, 2013 surgery because of her Tourette's Syndrome, Dr. McGuire engaged in disability discrimination in violation of ADA Title III.

25. Specifically, the ADA prohibits a place of public accommodation like Down East from failing "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."

26. The modification that Down East should have provided to Ms. Cutting would be a repair of her rotator cuff tear during the surgery, followed by a shoulder immobilizer to address any concern of involuntary movement of her shoulder.

27. The need for the above modification for Ms. Cutting's disability was easily achievable and should have been obvious to Dr. McGuire.

28. The above modification for Ms. Cutting's disability would not have imposed an undue hardship on Down East.

29. Ms. Cutting continued to suffer from daily pain and exacerbation of her rotator cuff tear for the next year after Dr. McGuire refused to repair her shoulder.

30. Plaintiff then consulted with another orthopedic surgeon named Jessica Aronowitz, MD, who ordered an MRI that was performed on November 23, 2014.

31. A full thickness rotator cuff tear was seen on MRI.

32. Dr. Aronowitz reviewed the MRI with Ms. Cutting during a December 4, 2014 office visit in which she recommended another surgery to repair the tear.

33. In order to address Ms. Cutting's Tourette's Syndrome, Dr. Aronowitz simply recommended a shoulder immobilizer following surgery to make sure Plaintiff did not move her shoulder during an involuntary motor tic.

34. At this December 4, 2014 appointment, upon learning that immobilization of her shoulder was readily achievable, Ms. Cutting developed reasonable cause to believe that Dr. McGuire had discriminated against her on the basis of her disability, and denied her reasonable medical care.

35. As of December 4, 2014, Ms. Cutting realized that Dr. McGuire's failure perform the surgery in November of 2013, followed by immobilization of her shoulder, amounted to a failure to provide her with a necessary modification for her disability.

## COUNT I –DISABILITY DISCRIMINATION UNDER THE ADA
### (42 U.S.C. § 12182 *et seq*.)

36. Plaintiff repeats the allegations contained in Paragraphs 1 through 35 of her Complaint as if fully set forth herein.

37. Down East engaged in unlawful disability discrimination against Ms. Cutting in a place of public accommodation, in violation of ADA Title III.

38. Dr. McGuire's conduct prevented Ms. Cutting from the full and equal enjoyment of and access to services in a place of public accommodation.

39. As a result of Defendant Down East's discriminatory actions, Ms. Cutting has suffered actual damages and is entitled to injunctive relief and her attorney's fees.

WHEREFORE, Plaintiff Carol Cutting requests that the Court award her relief under Title III, including injunctive and equitable relief, attorney's fees and costs, and any other damages afforded to her by law.

## COUNT II – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

40.Plaintiff repeats the allegations contained in Paragraphs 1 through 39 as if fully stated herein.

41.For all of the reasons set forth in Count I above, unlawful disability discrimination against Plaintiff in a place of public accommodation has taken place within the meaning of the Maine Human Rights Act.

42.Under 5 M.R.S. § 4613(2)(b)(7), Ms. Cutting is entitled to civil penal damages of at least $20,000.00.

WHEREFORE, Plaintiff Carol Cutting requests that the Court award her civil penal damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## SPECIFIC PRAYER FOR INJUNCTIVE RELIEF

For Defendant's disability discrimination, Plaintiff Carol Cutting hereby requests that the Court grant the following relief:

A.Enter Judgment in Plaintiff's favor;

B.Declare Defendant's conduct to be a violation of Plaintiff's rights under the ADA;

C.Enjoin Defendant, its agents, successors, employees, and those acting in concert with them from continuing to violate the rights of patients with Tourette's Syndrome, including Plaintiff;

    D.    Order disgorgement of the profits retained by Defendant from the surgery performed on Plaintiff, because Plaintiff did not receive the benefit of that surgery;

    E.    Order Defendant to pay Plaintiff for the 15 months of needless pain and suffering she endured after Dr. McGuire failed to accommodate her disability and repair her shoulder, at a rate of $100.00 per day;

    F.    Order Defendant to participate in mandatory training of all Down East physicians and staff about the non-violent, involuntary nature of Tourette's Syndrome, and the need to accommodate individuals with fine and gross motor disabilities.

## JURY TRIAL DEMAND

Plaintiff Carol Cutting hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated:  November 29, 2016        */s/ Laura H. White*

                                        Laura H. White, Bar No. 4025
                                        *Attorney for Plaintiff*
                                        BERGEN & PARKINSON, LLC
                                        62 Portland Rd., Suite 25
                                        Kennebunk, ME 04043
                                        (207) 985-7000
                                        *lwhite@bergenparkinson.com*


                                        */s/ Courtney M. Hart*

                                        Courtney M. Hart, Bar No. 4127
                                        *Attorney for Plaintiff*
                                        BERGEN & PARKINSON, LLC
                                        62 Portland Rd., Suite 25
                                        Kennebunk, ME 04043
                                        (207) 985-7000
                                        *chart@bergenparkinson.com*